IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAINTER'S MILL GRILLE, LLC, *et al.,* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-11-1607 |
| HOWARD S. BROWN, *et al.,* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This civil rights action arises out of a Lease Agreement between Painter's Mill Grille, LLC and 100 Painters Mill, LLC. Plaintiffs Painter's Mill Grille, LLC, Alessandro Vitale, Sergio Vitale and Rinaldo "Aldo" Vitale have filed a nine-count Complaint against 100 Painters Mill, LLC, Davis S. Brown Enterprises, LTD, Howard S. Brown, Lee Sachs and Carmella Bell (collectively "Defendants"). In the Complaint, Plaintiffs allege violations of 42 U.S.C. §§ 1981, 1982 and 1985(3) as well as claims of tortious interference with contract, tortious interference with economic relationships, abuse of process and breach of contract under Maryland common law against all Defendants. Pending before this Court is Defendants Lee Sachs and Carmella Bell's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF Nos. 8 & 9).[1] Also before this Court is Defendants Howard S. Brown, 100 Painters Mill, LLC and David S. Brown Enterprises, LTD's Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 12).

---

[1] The motion and supporting documents filed under ECF Nos. 8 & 9 are identical and will be treated as one motion.

1

The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendants Lee Sachs and Carmella Bell's Motion to Dismiss (ECF Nos. 8 & 9) is GRANTED.  Additionally, Defendants Howard S. Brown, 100 Painters Mill, LLC and David S. Brown Enterprises, LTD's Motion to Dismiss (ECF No. 12) is GRANTED.

<u>BACKGROUND</u>

The following facts are derived from Plaintiffs' Complaint and Brief in Opposition to Defendants' motions to dismiss as well as Defendants' pleadings in support of their motions to dismiss (ECF No. 8-2, 9-2, 12-1, 22 & 23).  Nonetheless, this Court accepts Plaintiffs' factual allegations as true and construes those facts in the light most favorable to the Plaintiffs.  *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Painter's Mill Grille, LLC is a "limited liability company organized and existing under the laws of the State of Maryland" with its principal place of business located at Suite 110, 100 Painters Mill Road, Owings Mills, Maryland 21117.  Pls.' Compl. ¶ 6, ECF No. 1. Alessandro Vitale, Rinaldo "Aldo" Vitale and Sergio Vitale (collectively "the Vitales") are the members of this limited liability company, which at all times was doing business as and operated Cibo's Bar & Grill ("Cibo"), a restaurant with a primarily African-American clientele.  David S. Brown Enterprises ("Brown Enterprises") and 100 Painter's Mill, LLC are limited liability companies "organized and existing under the laws of the State of Maryland," headquartered at Suite 900, 100 Painters Mill Road, Owings Mills, Maryland 21117.  Pls.' Compl. ¶¶ 10-11.  Brown Enterprises owns the building at 100 Painters Mill

Road.  Howard S. Brown is the Chairman of Brown Enterprises and an agent, servant, or employee of 100 Painters Mill, LLC.  Lee Sachs is the General Counsel for Brown Enterprises and Carmella Bell is the Assistant General Counsel for Brown Enterprises.  Both Lee Sachs and Carmella Bell represent Brown Enterprises and 100 Painters Mill, LLC.

This dispute is the result of an apparently difficult relationship between a Landlord and its Tenant.  On June 7, 2002, Painter's Mill Grille, LLC ("Tenant") entered into a ten-year Lease Agreement, extendable for two additional five-year terms, with 100 Painters Mill, LLC ("Landlord") for the use of Suite 110 in the building located at 100 Painters Mill Road.  The Lease Agreement was amended twice, once in July of 2003 and a second time on September 8, 2006.  The agreement stipulates that Landlord's consent is required before Tenant can assign his obligations to another individual or entity.

It is undisputed that during the term of the lease Painter's Mill Grille, LLC, as the Tenant, repeatedly failed to pay rent in a timely manner.  From November 2003 until April 2009 100 Painters Mill, LLC, as the Landlord, initiated seventeen rent actions and obtained a judgment in its favor each time.[2]  On May 22, 2009 Landlord foreclosed on Tenant's right of redemption due to its repeated failure to pay rent and obtained a restitution judgment for total rent due in the amount of $21,806.78.  Landlord then first scheduled to evict Tenant on December 2, 2009, but delayed this eviction until January 4, 2010 to once again give Tenant more time to become current with rent payments.  One day prior to the expiration of this

---

[2] A court may consider "matters of public record" that are appropriate for judicial notice.  *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006). A court is not required to accept as true "allegations that contradict matters properly subject to judicial notice." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002).

grace period, Painter's Mill Grille, LLC filed for bankruptcy protection in the United States Bankruptcy Court for the District of Maryland.  *See In re Painter's Mill Grille, LLC, Debtor*, Case No. 10-10026 (JFS) (Bankr. Md.).[3]

Almost six months after this bankruptcy action was dismissed, Painter's Mill Grille, LLC and the Vitales (collectively "Plaintiffs") brought this civil action seeking compensatory and punitive damages against Landlord, Brown Enterprises and the individual Defendants Howard S. Brown, Lee Sachs and Carmella Bell.  Plaintiffs contend that as the Cibo clientele became increasingly and predominantly African-American, Defendants "became progressively more hostile" and were determined to drive Cibo out of business.  Pls.' Compl. ¶ 18.  Plaintiffs allege that Defendants interfered with their ability to have a profitable business by (a)"charging arbitrary amounts of rent [and] common area maintenance fees (CAM)," (b)"turning off lights in [the] common area" of the building and interfering with Cibo patron's ability to access the restaurant during normal business hours, and (c) by instructing other employees in the building to avoid patronizing Cibo.  *Id.* at ¶¶ 21-22. Plaintiffs allege that throughout the term of the lease, Defendants Brown, Sachs and Bell, referred to their clientele as "Element," "Undesirable Element" and with other racial epithets.  Moreover, Plaintiffs allege that the seventeen successful rent actions initiated by Defendants against them were meant to drive them out of the building and out of business and were "based in part on unsubstantiated arbitrary amounts of rent and [common area maintenance] fees."  *Id.* at ¶ 23.

---

[3] This action was filed on January 3, 2010, dismissed on December 10, 2010 and then terminated on December 27, 2010.

Additionally, Plaintiffs allege that they sought to sell their business because of Defendants' repeated acts against them and their constant harassment.  To that effect, on October 31, 2008, Plaintiffs allege that they entered into an Asset Purchase Agreement with Earnest and Betty Hines ("The Hines"), an African American couple.   According to Plaintiffs, Defendants intentionally interfered with Plaintiffs' ability to contract and "induced the couple to breach the contract."  *Id.* at ¶ 28.  Particularly, Plaintiffs claim that Defendants "unreasonably [withheld] consent," imposed "unreasonable demands on both the Hines and Plaintiffs, and made "unfounded derogatory comments and accusations about Cibo."  *Id.* at ¶ 30.  Moreover, Plaintiffs claim that during the second negotiations meeting between the Hines, Plaintiffs and Defendants, Defendants Sachs and Bell made repeated remarks about not wanting "another chicken and waffle shack."  *Id.* at ¶¶ 19, 29.  According to Plaintiffs, all other parties present at that meeting perceived these remarks as racially offensive. Moreover, Plaintiffs contend that Sachs and Bell's remarks and behavior during the meeting caused the Hines to abandon their efforts at purchasing the restaurant.   Plaintiffs further claim that Defendants were motivated both by a desire to drive them out of business and by racial animus against the Hines.

As a result, Plaintiffs' Complaint alleges nine Counts against Defendants.  Counts I & II allege violations of 42 U.S.C. § 1981.  Count III alleges violations of 42 U.S.C. § 1982. Count IV claims that the Defendants conspired to drive Plaintiffs out of business and out of the building because of the race of their patrons and the Hines in violation of 42 U.S.C. § 1985(3).  The remaining counts allege claims under Maryland law.  Count V & VI allege tortious interference with contract, Count VII alleges tortious interference with economic

relationships, Count VIII alleges abuse of process and Count IX alleges breach of contract. *Id.* at 60-92.

STANDARD OF REVIEW

Although Defendants alternatively move for Summary Judgment, this Court will treat their motions exclusively as motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet v. Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

A complaint must be dismissed if it does not allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950; *see also Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).

<u>ANALYSIS</u>

Defendants argue that Plaintiffs' Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, Defendants argue that (a) the Vitales do not have standing as individual plaintiffs, (b) Defendants Sachs and Bell cannot be liable for legal advice given within the scope of their representation of the other named Defendants, (c) Howard S. Brown and Brown Enterprises were not parties to the Lease Agreement, and (d) Plaintiffs fail to establish the element of each claim against the Landlord.

## I.      Standing of the Vitales

Defendants argue that the Vitales, as shareholders of Cibo, lack standing to bring this action individually to recover for alleged harm to their business.  To establish his standing, a plaintiff bears the burden of demonstrating that:

> (1) [he] suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc.*, 528 U.S. 167, 180-81(2000) (citing *Lujan*, 504 U.S. 555, 560-61 (1992)).  However, under Maryland law, shareholders "cannot sue individually to recover damages for injuries to a corporation."  *Seton v. United Gold network, LLC*, DKC-06-1246, 2008 WL 1925180, at *4 (D. Md. Apr. 30, 2008) (citing *Waller v. Waller*, 187 Md. 185, 190 (1946)).  Only the corporation itself can bring an action for an injury, even where "the injury may incidentally result in diminishing or destroying the value of the stock."  *Id.*  Thus, the Vitales as members of Painter's Mill Grille, LLC cannot bring individual claims against

Defendants for injuries to their business.  Therefore, the Vitales lack standing and Painter's Mill Grille, LLC is the only Plaintiff with standing to bring this action.

## II.    Plaintiffs' Claims against Attorneys Lee Sachs and Carmella Bell

Defendants Lee Sachs and Carmella Bell argue that the claims against them should be dismissed because they are not alleged to have performed any individual acts against Plaintiffs and because all claims against them arise out of their legal representation of the other Defendants.   As this Court has recently recognized, "[a] non-client third party generally cannot attack an attorney for the actions he takes on behalf of his clients." *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *21 (D. Md. Aug. 8, 2011) (citing *Pradhan v. Al–Sabah*, 299 F. Supp. 2d 493, 496 (D. Md. 2004)). Imposing liability on an attorney for his legal advice would impair his ability to provide zealous representation.  *Pradhan*, 299 F. Supp. 2d at 496.  In Maryland, an attorney's liability is limited to "(1) cases implicating the duty an attorney owes to his client; and (2) cases implicating the duty an attorney owes to any third-party beneficiaries of the attorney-client relationship."  *Coulibaly*, 2011 WL 3476994, at *21 (citing *Schatz v. Rosenberg*, 943 F.2d 485, 492–93 (4th Cir. 1991)).  Because Sachs and Bell were acting within the scope of their legal representation of Brown Enterprises and 100 Painters Mill, LLC, they are not individually liable.  Thus, Sachs and Bell are not proper defendants in this case and the claims against them are DISMISSED WITH PREJUDICE.

Defendants argue that Plaintiffs' remaining claims should be dismissed because: (a) Howard S. Brown and Brown Enterprises were not parties to the Lease Agreement, and (b)

Plaintiffs fail to sufficiently establish the elements of the claims against 100 Painters Mill, LLC.

## III.   Plaintiffs' Federal Law Claims

### a.   *Claims under 42 U.S.C. § 1981 (Counts I & II)*

"Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a)."  *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).  Where the record contains no direct evidence of race discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973).  *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("[T]he elements required to establish a *prima facie* case are the same under Title VII and Section 1981.").  Under this framework, the plaintiff must first make out a *prima facie* case of discrimination.  *DAG Petroleum Suppliers, LLC*, 268 Fed. Appx. 236, 240 (4th Cir. 2008).

A plaintiff establishes a *prima facie* case of discrimination under 42 U.S.C. § 1981 in the context of goods and services where he alleges that "(1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers."  *Williams*, 372 F.3d at 667.  In the context of hotel eviction claims under 42 U.S.C. § 1981, the United States Court of Appeals for the Fourth Circuit and this Court have

also held that to state a *prima facie* case of discrimination, a plaintiff must establish that he (1) is a member of the protected class, (2) engaged in comparable conduct than other non-class members or sought similar accommodations, and (3) was treated differently than similarly situated non-class members.  *See Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001); *Evans v. Holiday Inns, Inc.*, 951 F. Supp. 85, 89 (D. Md. 1997).

Plaintiffs argue, in reliance on this Court's decision in *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 704 (D. Md. 2000), that circumstantial evidence creating a reasonable inference of discrimination is sufficient to establish a *prima facie* case of discrimination under 42 U.S.C. § 1981.  However, the Fourth Circuit declined to adopt this analytical approach where "adequate comparative evidence" existed to show that a plaintiff was treated differently than non-protected class members.  *Williams*, 372 F.3d at 668 n. 5.

In Counts I & II, Plaintiffs allege that Defendants repeatedly acted to "injure, damage or destroy" their business and sought to drive them to leave the premises because of their clientele's race.  Pls.' Compl. ¶ 37, ECF No. 1.  Plaintiffs further claim that Defendants "intentionally interfere[ed]" with the sale of their business because of the race of its clientele and the race of its prospective buyers.  *Id.* at 48.  However, Plaintiffs' claims are devoid of any allegations that they were treated differently by Defendants than similarly situated tenants outside the protected class.  While Plaintiffs mention in a footnote in their Opposition to Defendants' Motions to Dismiss that "one could speculate" that Defendants "got rid" of another tenant catering to African-Americans because of their racial animus, ECF No. 21 at 13 n. 6, this Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments."  *Nemet v. Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*,

591 F.3d 250, 253 (4th Cir. 2009). Additionally, Plaintiffs fail to demonstrate that they met the requirements to pay for and receive the services of a Landlord. In fact, Defendants obtained seventeen judgments in their favor in rent proceedings against Plaintiffs. Accordingly, Plaintiffs have not pleaded "factual content that allows the court to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Therefore, Plaintiffs fail to state a claim of race discrimination under 42 U.S.C. § 1981. Counts I & II are DISMISSED WITHOUT PREJUDICE.

  b. *Claims under 42 U.S.C. § 1982 (Count III)*

Pursuant to 42 U.S.C. § 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." "A plaintiff alleging a § 1982 claim "must demonstrate that the defendant's conduct impaired [his] property interests." *Garris v. Martin's Food* Market, ELH-11-602, 2011 WL 2222038, at *2 (D. Md. June 3, 2011) (quoting *Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair*, 743 F.2d 1207, 1211 (7th Cir. 1984)). Specifically, a section 1982 claim requires a plaintiff to establish that he was "deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or . . . [that plaintiff] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Huang v. Culpepper*, DKC-10-0089, 2011 WL 310477, at *4 (D. Md. Jan. 28, 2011) (quoting *Givens v. Main Street Bank*, Civ. No. 5:08CV25, 2009 WL 1120599, at *6 (N. D. W.Va. Apr. 24, 2009) and *Dobson v. Central Carolina Bank and Trust Co.*, 240 F. Supp. 2d 516 (M. D. N.C. 2003)).

Plaintiff asserts that Defendants impaired their rights under section 1982 by "willfully, maliciously and intentionally driving [them] from the leased premises and otherwise injuring, damaging and destroying Cibo's business, because of the race of it [sic] clientele." Pls.' Compl. ¶ 53.   Again, Plaintiffs fail to allege that similarly situated tenants outside the protected class were treated differently.   Moreover, although Plaintiffs assert that they were treated in a hostile manner, they do not allege that reasonable persons would find that treatment unreasonable.   Plaintiffs' claims in Count III are conclusory and do not permit this Court to infer that the Defendants are liable under 42 U.S.C. § 1982.   Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim, *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009), Plaintiffs have failed to state a *prima facie* case under 42 U.S.C. § 1982. Therefore, Plaintiffs' claims against Defendants in Count III are DISMISSED WITHOUT PREJUDICE.

  *c.* *Claims under 42 U.S.C. § 1985(3) (Count IV)*

Defendants contend that the conspiracy claim should be dismissed because Howard S. Brown, as an agent of both 100 Painters Mill and Brown Enterprises could not conspire with these companies nor could he conspire with their attorneys, Sachs and Bell.   A plaintiff states a claim of conspiracy under 42 U.S.C. § 1985(3), if he establishes "(1) a conspiracy of two or more persons, (2) . . . motivated by a specific class-based, invidiously discriminatory animus to (3) deprive [him] of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th

Cir.1985); *see also Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).  "A corporation cannot conspire with itself any more than a private individual can, and . . . the acts of the agent are the acts of the corporation."  *Buschi*, 775 F.2d at 1251 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), *cert denied*, 345 U.S. 925 (1953)).  Moreover, attorneys cannot be liable for advice given during the lawful exercise of their professional functions.  *See supra* at Subpart II; *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *21 (D. Md. Aug. 8, 2011).

Plaintiffs allege that Sachs, Bell and Brown are members of the conspiracy.  Given the legal precedent and this Court's dismissal *supra* of Plaintiffs' claims against Sachs and Bell, Plaintiffs cannot allege that two or more persons conspired against them. Consequently, they fail to state a claim under 42 U.S.C. § 1985(3) and Count III is DISMISSED WITH PREJUDICE.

## IV.   Plaintiffs' State Law Claims

As Plaintiffs' federal law claims are dismissed, this Court addresses whether to retain supplemental jurisdiction over the pendent state law claims.  *See* 28 U.S.C. § 1367(c)(3).  In addressing this issue, the Supreme Court has advised that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citation omitted).  The Court of Appeals of Maryland has "often commented that . . . state constitutional provisions are *in pari materia* with their federal counterparts."  *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (Md. 2002); *see also Miller v. Prince George's County*, 475

F.3d 621, 631 n. 5 (4th Cir. 2007). Accordingly, the same analysis applies to the Plaintiffs' corresponding state constitutional claims and in the interests of judicial economy, fairness, and convenience, this Court will address the Plaintiffs' pendent state law claims.

a. *Tortious Interference with Contract and Economic Relationships Claims (Counts V, VI & VII)*

Plaintiffs bring both claims of tortious interference with contract (Counts V & VI) and of tortious interference with economic relationships (Count VII) against the Defendants. Under Maryland law, in order to state a claim for tortious interference with contract or economic relationships, a plaintiff must allege: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting." *Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010). Tortious interference with contract applies when a party "induc[es] the breach of an existing contract." *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984). The tort of intentional interference with economic relationships is broader and applies when a defendant "maliciously or wrongfully interfere[es] with economic relationships in the absence of a breach of contract." *Id.* However, the Maryland Court of Appeals "has consistently taken the position that the tort of wrongful interference with [contract and/or] economic relations will not lie where the defendant is a party to the [contract and/or] economic relationship with which the defendant has allegedly interfered." *Kaser v. Financial Protection Marketing, Inc.*, 831 A.2d 49, 54 (Md. 2003); *see also K & K Management v. Lee*, 316 Md. 137, 156, 557 A.2d 965, 974 (1989) ("This Court has never

permitted recovery for the tort of intentional interference with a contract when both the defendant and the plaintiff were parties to the contract.") (internal quotation marks omitted).

In Counts V and VI, Plaintiffs allege that Defendants induced the breach of sales contracts between Plaintiffs and the Hines and, on what appears to be a separate occasion, between Plaintiffs and an unidentified third-party.  It is important to note that, pursuant to the Lease Agreement, the consent of the Landlord, 100 Painters Mill, LLC, was required before the Tenant, Painter's Mill Grille, LLC could contract to assign the Lease to another party.[4]  As an assignment of the lease by Plaintiffs to another party would affect Defendants' interest, Defendants are therefore parties to the contract or in a broader sense to the economic relationship.  *See Sharrow v. State Farm Mutual*, 511 A.2d 492, 498 (Md. 1986) (noting that "even though a third party may for his own benefit intentionally induce one party to terminate a contract with another, this alone will not render him liable in an action for tortious interference if he had a right to cause the breach since, in such circumstances, the conduct would not be wrongful or improper").  As such, Defendants cannot be liable for the tort of intentional interference with a contract to which they have a relationship.  Counts V and VI are DISMISSED WITH PREJUDICE.

In Count VII, Plaintiffs allege that Defendants continuously interfered with their economic relationships by intentionally driving them out of business "so that [they] could no

---

[4] "Tenant shall not assign, mortgage or encumber this lease, nor sublet the Premises or any part thereof, without the consent of the Landlord.  Landlord shall act reasonably in granting any requested consent, and shall be entitled to evaluate the financial capability of the proposed subtenant or assignee, together with any proposed guarantors, and shall also have the right to evaluate any reputation of the proposed subtenant or assignee, and/or principles, in any community in which it, he, she or they have worked or lived.  If the requested assignment has been approved by Landlord consistent with those standards, the obligation of tenant, and the guarantors of tenant shall be relieved, with respect to any obligations accruing after the effective date of the assignment so approved by Landlord."  Second Amendment to Lease Agreement at ¶ 5, ECF No. 1-1.

longer contract with their African-American and Spanish-American clientele." Pls.' Compl. ¶ 76. To establish the tort of intentional interference with economic relationships, "the conduct must be wrongful, independent from its effect on the plaintiff's business relationships." *Alexander v. Evans*, 650 A.2d 260, 271 (Md. 1994). The Maryland Court of Appeals defines wrongful conduct as "common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (internal quotations omitted). Thus, Plaintiffs must allege that Defendants committed specific wrongful acts to establish the tort. However, Plaintiffs merely state that Defendants' actions were unlawful and do not present facts from which this Court could infer that Defendants' conduct was in fact unlawful. Plaintiffs' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009), do not sufficiently establish the elements of tortious interference with economic relationships. Therefore, Plaintiffs' claims in Count VII are DISMISSED WITHOUT PREJUDICE.

     *b.*   *Abuse of Process Claim (Count VIII)*

Defendants argue that Plaintiffs' abuse of process claims should be dismissed because Plaintiffs fail to allege recoverable damages and a wrongful action beyond the initiation of rent proceedings against them. The elements of an abuse of process claim are: (1) "that the defendant willfully used process after it [was] issued in a manner not contemplated by law; [(2)] that the defendant acted to satisfy an ulterior motive; and [(3)], that damages resulted from the defendant's use of perverted process." *Campbell v. Lake Hallowell Homeowners Ass'n*,

852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004), *cert. denied,* 837 A.2d 926 (Md. 2003)(quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)) (quotation marks omitted).   Additionally, Maryland law requires a plaintiff to allege an unlawful arrest or seizure of property to support the damages element of an abuse of process claim.   *See One Thousand Fleet*, 694 A.2d at 960; *see also Campbell*, 852 A.2d at 1044.   "A bad motive alone is not sufficient to establish an abuse of process."   *One Thousand Fleet*, 694 A.2d at 956 (citing *Wells v. Orthwein*, 670 S.W.2d 529, 533 (Mo.Ct.App.1984) ("[N]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be.")).   As such, the tort of abuse of process does not "arise from a regular use of process, even with ulterior motives;" it requires "a perversion of court process to accomplish some end which the process was not designed to accomplish." *Capitol Elec. Co. v. Cristaldi*, 157 F. Supp. 646, 648 (D. Md. 1958).

Applying this principle to the case, even taking the allegations that Defendants Sachs and Bell were motivated by racial animus and uttered racially discriminatory terms in the light most favorable to the Plaintiffs, the alleged racial animus of an attorney involved in seventeen successful rent actions simply does not give rise to the tort of abuse of process. Additionally, while Plaintiffs allege that Defendants "willfully used rent court and other civil proceeding against Plaintiffs for a purpose different from the proceeding's intended purpose" and that Defendants initiated these rent proceedings "based in part on unsubstantiated arbitrary amounts of rent" and other fees,  Pls.' Compl. ¶¶ 81-82, Plaintiffs do not properly allege that these proceedings resulted from a perversion of the court process.  Plaintiffs were delinquent in their payment of rent to Landlord on several occasions

and judgments were issued in favor of Defendants in the seventeen rent actions.  Thus, Plaintiffs fail to meet the *Iqbal-Twombly* plausibility standard set by the Supreme Court of the United States.  *See Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As such, Plaintiffs fail to state a claim of abuse of process against the Defendants and their claims in Count VIII are DISMISSED WITH PREJUDICE.

  *c.   Breach of Contract Claim (Count IX)*

  To establish a cause of action for breach of contract in Maryland, a plaintiff must allege that a contractual obligation exists and that the defendant has breached obligation.  *See Continental Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566 (1977).  A plaintiff must plead these elements in the complaint in order to establish a prima facie case for breach of contract.  *See, e.g., Waterfront Guard Assoc. v. Amstar Corp.*, 363 F. Supp. 1026, 1030 (D. Md. 1973).  Despite having seventeen rent actions successfully prosecuted against them, Plaintiffs generally allege that Defendants breached the lease in a number of ways.  However, Plaintiffs fail to indicate which provisions of the lease were breached or to allege specific facts in support of that claim.  Plaintiffs' factual allegations are insufficient to allow this Court to infer that Defendants are liable.  As with Plaintiffs' other claims, Plaintiffs' conclusory allegations do no reach the *Iqbal-Twombly* plausibility requirement.  Plaintiffs fail to state a claim of breach of contract upon which relief can be granted.  Consequently, Plaintiffs' claims in Count IX are DISMISSED WITHOUT PREJUDICE.

<u>CONCLUSION</u>

For the reasons stated above, Defendants Lee Sachs and Carmella Bell's Motion to Dismiss (ECF Nos. 8 & 9) is GRANTED.  Defendants Howard S. Brown, 100 Painters Mill, LLC and David S. Brown Enterprises, LTD's Motion to Dismiss (ECF No. 12) is GRANTED.  Specifically, all of the Plaintiffs' claims against Defendants Lee Sachs and Carmella Bell are DISMISSED WITH PREJUDICE.  Counts IV, V, VI and VIII are DISMISSED WITH PREJUDICE.  Finally, Counts I, II, III, VII, IX are DISMISSED WITHOUT PREJUDICE.

A separate Order follows.

Dated:        February 21, 2012          /s/_____

                                          Richard D. Bennett
                                          United States District Judge